**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth Ray WILLIAMS,**
**Defendant–Appellant.**

No. 88–3289.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1989.

Decided March 13, 1990.

Mary Linda Pearson, Edmonds, Wash., for defendant-appellant.

Michael P. Healy, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WALLACE, PREGERSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Kenneth Ray Williams appeals his conviction for the illegal hunting of moose in

violation of the Lacey Act. Williams claims that his conviction should be overturned because the government failed to establish the validity of use of the wildlife law against a tribe member. The United States argues that there is no need for the government to establish the validity of the law's use against a tribe member. We affirm the conviction and hold that the government must establish the validity of the use of wildlife laws against tribe members but that similar laws enacted by the tribe can establish this validity.

## FACTS

Kenneth Ray Williams is an enrolled member of the Nez Perce Tribe. Williams sold moose meat to an undercover agent of the United States Fish and Wildlife Service on November 4, 1986. The sale occurred outside of the Reservation near Lolo Pass in the state of Montana and followed several meetings with the undercover agent.

On September 18, 1987, Williams was indicted for violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B). These two sections state that:

> It is unlawful for any person ... to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or wildlife taken, possessed, transported or sold in violation of any law, or regulation of any State....

16 U.S.C. § 3372(a)(2)(A).

> Any person who violates any provision of this chapter ... shall be fined not more than $20,000, or imprisoned for not more than five years, or both. Each violation shall be a separate offense and the offense shall be deemed to have been committed not only in the district where the violation first occurred, but also in any district in which the defendant may have taken or been in possession of the said fish or wildlife or plants.

16 U.S.C. § 3373(d)(1)(B).

The indictment accused Williams of selling two whole cow moose, one whole calf moose, and the hind quarter of a bull moose in violation of Idaho Code §§ 36-201(a), 36-202(p), & 36-501 and Montana Code §§ 87-2-101(5) & 87-3-111. These state statutes make it illegal to sell, possess or transport certain protected categories of game animals, including moose.

Williams filed several motions on December 7, 1987 seeking to have the indictment dismissed for lack of jurisdiction. The district court denied these motions.

A superseding indictment was issued on February 11, 1988. This indictment repeated the count alleged in the original indictment. It also included a second count with allegations of a new Lacey Act violation by Williams for possessing, transporting and selling wildlife in violation of tribal law. Specifically, Williams was accused of violating the Law and Order Code for the Nez Perce Tribe, §§ 3-103(30), 3-108, 3-301, 3-504 and 3-704. The key provision is § 3-504, prohibiting the trafficking in game killed pursuant to any hunting treaty rights.

Williams filed a new motion to dismiss the superseding indictment for lack of jurisdiction, which the district court denied. In denying the motion, the district court made two legal conclusions with regard to Count I, alleging that Williams violated the laws of Idaho and Montana. First, the court rejected the argument made by the United States that since Williams' activity was prohibited by tribal law, Williams could not claim that he was protected by rights established by treaty with the Nez Perce Tribe. The court went on to conclude that since it was possible that Williams was protected by treaty rights, the United States had the burden of demonstrating that the state laws were reasonable and necessary for conservation.

The court held a hearing on August 23, 1988 on the issue of the necessity of the state laws for conservation of wildlife. On September 6, 1988, the court issued an order declaring that the laws are reasonably necessary for the conservation of wildlife and therefore denying the motion to dismiss the indictment.

On September 29, 1988, Williams entered a plea of guilty to Count I of the indictment. Pursuant to the plea agreement, the

court entered judgment on November 28, 1988, convicting Williams of Count I and dismissing Count II.[1] Williams was sentenced to six months in prison and ordered to pay a fine of fifty dollars. Williams filed a timely notice of appeal.

## DISCUSSION

### A. *Standard of Review*

The question of whether or not the government is required to establish the validity of conservation laws before enforcing such laws against tribe members is a legal question, and therefore reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. *The Establishment of Conservation Necessity*

Before a state can apply its conservation laws to Indians who have acquired treaty rights to hunt and fish the state must establish that its laws are necessary for conservation purposes. *Antoine v. Washington*, 420 U.S. 194, 207, 95 S.Ct. 944, 951, 43 L.Ed.2d 129 (1975); *United States v. Sohappy*, 770 F.2d 816 (9th Cir.1985), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986). Thus, before convicting Williams, the district court held a hearing to determine the conservation necessity of the Montana and Idaho laws, applied to Williams through the Lacey Act. As a result of that hearing, the court held that the wildlife laws are reasonably necessary to promote conservation and therefore that Williams could be convicted of violating those laws.

The United States claims that the district court need not have assessed conservation necessity and that Williams could have been convicted without a hearing on the issue. The United States argues that the treaty right to hunt is a tribal right and not

an individual right. Since the tribe has chosen to outlaw hunting, the argument continues, an individual member cannot assert that right. Without the assertion of this right, the United States concludes, the government need not prove the conservation necessity of hunting laws.

We choose not to take this step advocated by the United States. The purpose of requiring the government to prove conservation necessity before imposing its wildlife laws on tribe members is to safeguard the hunting and fishing rights held by the tribes while pursuing the important goal of conservation. "The aim is to accommodate the rights of Indians under the Treaty and the rights of other people." *Department of Game v. Puyallup Tribe*, 414 U.S. 44, 49, 94 S.Ct. 330, 333, 38 L.Ed.2d 254 (1973). The argument of the United States would essentially lead to the loss of tribal treaty rights in hunting if the tribe chooses to regulate the activity in the same manner as a state. We interpret the tribal wildlife regulations as an exercise of treaty rights and not as a disclaimer of those rights.

■ However, we find that it is significant that the tribe has chosen to outlaw the same form of hunting that the states, through the Lacey Act, have also prohibited. The requirement of establishing the validity of wildlife laws through a showing of conservation necessity applies only to *state* laws incorporated through the Lacey Act. *Sohappy*, 770 F.2d at 824. There is no requirement of conservation necessity for establishing the validity of *tribal* wildlife laws incorporated through the Lacey Act.[2] Tribal wildlife laws are *per se* valid against tribe members. The requirement of a full hearing to establish the validity of the state wildlife laws is superfluous if, as in this case, the tribe enacted similar laws which are clearly valid.[3]

■ We therefore find that if an Indian tribe has enacted wildlife laws similar to the state or federal laws that are being

**1.** Count II of the superseding indictment alleged violations of tribal law, incorporated in the Lacey Act.

**2.** The purpose of the Lacey Act is to conserve this nation's wildlife. *See* 1981 U.S.Code Cong. & Admin.News 1748–51. We share the assumption made by Congress when it incorporated

tribal wildlife laws into the federal conservation scheme through the Lacey Act that such tribal laws serve conservation purposes.

**3.** We note that the Nez Perce Tribe has outlawed commercial hunting of moose but not subsistence hunting. Fishing and Game Code of the Nez Perce Tribe, §§ 3–504 and 3–601. Williams

enforced against tribe members, the tribal laws create a presumption of validity. The courts must make a finding of the validity of the use of state or federal wildlife laws against tribe members. However, there is no need for a hearing on the issue of conservation necessity if the tribe itself has enacted similar, valid laws. Trial courts need only establish the existence of such similar laws in order to establish the validity of the state or federal laws.

In *Sohappy*, we held that the government had the burden of establishing the conservation necessity of state and federal wildlife laws before enforcing the laws against members of tribes with hunting and fishing treaty rights. 770 F.2d at 824. The *Sohappy* court took note of the fact that tribal law prohibited the same activity at issue in the Lacey Act prosecution, but did not conclude that the tribal prohibition was sufficient to establish validity. *Id.* at 825. We take that step now, and hold that the government can meet its burden by proving the existence of tribal wildlife laws similar to the state and federal laws which the government is attempting to enforce against tribe members.

Since it is clear that the Nez Perce Tribe has enacted laws similar to those which Williams was convicted of under the Lacey Act, we need not reach the issue of whether or not the evidence presented fully establishes the conservation necessity of the Idaho and Montana prohibitions on commercial moose hunting.[4] We find that the tribal laws establish the validity of the Lacey Act prosecution.[5]

## CONCLUSION

Williams was convicted of violating wildlife laws validly enforced against him

through the Lacey Act. We therefore AFFIRM the conviction.

---

was convicted of commercial hunting of moose and therefore was convicted of an act that is clearly prohibited by his tribe.

4. Williams also claims that the state laws enforced against him through the Lacey Act discriminate against Indians. This is not an equal protection claim but rather a reference to the requirement that in establishing the validity of the enforcement of wildlife laws against Indians, the government must show that the laws do not discriminate against Indians. *Puyallup Tribe v. Department of Game of Wash.*, 391 U.S. 392, 399, 88 S.Ct. 1725, 1729, 20 L.Ed.2d 689

(1968). Since we find that the validity of the laws enforced against Williams has been established through the enactment of similar tribal laws, we also find that the state and federal laws do not discriminate against Indians.

5. Williams also challenged the process by which the state wildlife laws were enacted. However, appellant has not alleged any specific error in the lawmaking process. Since we do not see any errors in the promulgation of the laws, we decline to invalidate the laws on this ground.